**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

ANDRE JACKSON
758 Lamont St. NW
Washington, D.C. 20010

                        Plaintiff,

    v.

THE DISTRICT OF COLUMBIA
c/o Mayor and Office of the Attorney General
for the District of Columbia
400 6th Street NW
Washington, D.C. 20001

and

DONALD GREEN and AFAM ISHAKWUE
Metropolitan Police Department Officers
c/o Office of the Attorney General for the
District of Columbia
400 6th Street NW
Washington, D.C. 20001

                  Defendants.

Case No. 1:23-cv-_____

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DAMAGES**

**NATURE OF THE ACTION**

1.     Andre Jackson is a 31-year old Black man, loving father, artist, and D.C. resident. On the afternoon of April 6, 2022, Mr. Jackson planned to take his six-year-old daughter to dinner and other fun activities. Instead, Metropolitan Police Department ("MPD") Officer Donald Green ("Defendant Green"), MPD Officer Afam Ishakuwe ("Defendant Ishakuwe") (collectively "Defendant Officers"), and other unnamed MPD officers seized and arrested Mr. Jackson without

1

probable cause within seconds of approaching him on a sidewalk; sexually and physically assaulted Mr. Jackson during the arrest; and then jailed Mr. Jackson for over 24 hours. Although Mr. Jackson's charges were ultimately "no-papered,"[1] the arrest caused him to miss the quality time he planned to spend with his daughter and, to this day, causes him significant emotional trauma, including a fear of spending more than a few minutes outside of his home, of being abused by the police without warning or justification, and of being separated from his daughter.

2.      The officers lacked probable cause to arrest Mr. Jackson, and the most basic investigatory steps—such as looking up Mr. Jackson's license and car registration—would have revealed that Mr. Jackson was not the person the officers claimed they were seeking. Instead of asking any questions or conducting any investigation, Defendant Officers seized and arrested Mr. Jackson within mere seconds of approaching him.

3.      Defendant Officers' behavior during Mr. Jackson's arrest is representative of MPD's policy of conducting "jump-outs" in low-income Black neighborhoods. A "jump-out" consists of several MPD officers jumping out of their cars and seizing a civilian without probable cause.[2] Defendant Officers arrested Mr. Jackson near the Park Morton Apartments, which is a D.C. Housing Authority property reserved for low-income residents.[3]

4.      In a 2022 deposition from MPD Sergeant Charlotte Djossou's Whistleblower Act lawsuit, she testified that she told her MPD superiors, regarding jump-outs, "[T]his was misconduct. This

---

[1] *See* District of Columbia Courts, What Does 'No Paper' Mean? (last visited Apr. 4, 2023), http://dccourts.gov/node/559 ("If an arrest charge(s) is 'no papered,' it means that the USAO or OAG has decided not to prosecute and the defendant is released if that defendant has no other pending matters.").

[2] *See* JORDAN CRUNKELTON *ET AL*, END JUMP-OUTS 1 (Sept. 2020), https://dcjusticelab.org/wp-content/uploads/2022/04/EndJump-outs.pdf.

[3] *See* D.C. Housing Authority, DCHA Public Housing Properties (last visited Apr. 4, 2023), https://www.dchousing.org/vue/customer/properties_view.aspx.

was clear misconduct . . . You know, [MPD does not] have probable cause and they are jumping out on these people in these poor neighborhoods."[4]

5.     According to MPD's own data:[5]

a.     "Black people compose 72% of those stopped in the District despite making up 46% of the D.C. population."[6]

b.     "Black people make up 87% of non-traffic stops and 91% of the searches that resulted in no warning, ticket, or arrest. Black youths made up 89% of the children who were stopped and were stopped 10 times more often than their white peers."[7]

c.     "Less than one percent of all stops and less than two percent of non-traffic stops led to the seizure of guns."[8]

6.     In a 2022 deposition, MPD Chief Robert Contee testified that he did not investigate Sgt. Djossou's claims that jump-outs were still being conducted, and that "[MPD] could be doing a jump-out right now and we may not know that."[9]

7.     Defendant Officers' jump-out seizure, arrest, and assault of Mr. Jackson humiliated him in front of his neighbors, injured his body, and caused him severe emotional distress that lasts to this day.

---

[4] *See* Eric Flack & Stephanie Wilson, *DC Police Chief Testifies He Did Not Investigate Report of Unconstitutional Police Stops Known As 'Jump Outs'*, WUSA9 (Feb. 6, 2023), https://www.wusa9.com/article/features/originals/dc-police-jump-outs-tyre-nichols-dc-police-unconsitutional-stop/65-a170a6af-613f-4adf-97ef-7c3b7972c40f.

[5] *See* MPD, STOP DATA REPORT (Feb. 2020), https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/Stop%20Data%20Report.pdf

[6] *See* ACLU DC, *ACLU Analysis of D.C. Stop-and-Frisk Data Reveals Ineffective Policing, Troubling Racial Disparities* (June 16, 2020), https://www.acludc.org/en/press-releases/aclu-analysis-dc-stop-and-frisk-data-reveals-ineffective-policing-troubling-racial.

[7] *See* CRUNKELTON *ET AL*, *supra n.2*, at 1.

[8] *See id.*

[9] *See* Flack & Wilson, *supra* n.4.

8.     Mr. Jackson therefore brings this suit against Defendant Officers and their employer, the District of Columbia.

## PARTIES

9.     Plaintiff Andre Jackson ("Mr. Jackson") is a resident of Washington, D.C.

10.     Defendant Afam Ishakwue ("Defendant Ishakwue") has been an MPD officer since February of 2014. At the time of the events at issue, Defendant Ishakwue was acting within the scope of his employment and under color of law of the District of Columbia. He is sued in his individual capacity.

11.     Defendant Donald Green ("Defendant Green") has been an MPD officer since January of 2014. At the time of the events at issue, Defendant Green was acting within the scope of his employment and under color of law of the District of Columbia. He is sued in his individual capacity.

12.     Defendant District of Columbia is a municipal corporation and the local government of Washington, D.C. It operates and governs MPD, which is a *non sui juris* entity, pursuant to the laws of the District of Columbia. In this case, the District acted through its agents and employees, including the Defendant Officers.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action presents federal questions. This Court also has jurisdiction under 28 U.S.C. § 1343 because the action seeks to redress the deprivation of rights under the Fourth and Fifth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. § 1983.

14.     Plaintiff's claims under the laws of the District of Columbia arise from the same events as the federal claims and are therefore within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this Court because the events that give rise to this action occurred in the District of Columbia.

16.     This Court has personal jurisdiction over Defendants because they were employed by the District of Columbia during all times relevant to this Complaint, and they were engaged in the relevant conduct in the District of Columbia.

## STATEMENT OF FACTS

### *Officers Unlawfully Seized and Arrested Mr. Jackson Within Seconds of Approaching Him*

17.     On the evening of April 6, 2022, Mr. Jackson was chatting with his friends and neighbors on a public sidewalk close to Park Norton Apartments, a D.C. Housing Authority property reserved for low-income residents.[10]

18.     Mr. Jackson had plans to take his six-year-old daughter to dinner and other fun activities. He had briefly stopped to chat with his friends on his way to pick her up.

19.     Mr. Jackson was calmly leaning against a car when Defendant Officers jumped out of their patrol car and made their way towards him.

20.     Mr. Jackson's hands were in plain sight

21.     Mr. Jackson was wearing a face covering to protect his face from the elements, making only his eyes, eyebrows, and forehead visible.

22.     Mr. Jackson did not attempt to move away from Defendant Officers as they approached.

---

[10] *See* D.C. Housing Authority, *supra* n.3.

23.     Defendant Green walked up to Mr. Jackson and claimed, without more, that Mr. Jackson was "driving the car the other day." He did not elaborate or describe any criminal activity with which he suspected Mr. Jackson of being involved.

24.     Mr. Jackson did not attempt to move away from Defendant Green after Defendant Green made that statement.

25.     Within seconds, Defendant Ishakwue asked Mr. Jackson if he had identification on him. Defendant Green simultaneously began reaching for the front pocket of Mr. Jackson's hoodie.

26.     Mr. Jackson did not move or resist when Defendant Green grabbed the pocket of his hoodie.

27.     Instead, Mr. Jackson remained still and calmly asked, "What are you touching me for?"

28.     Before Mr. Jackson had finished his sentence, Defendant Green instructed Defendant Ishakwue to handcuff him.

29.     In response, Defendant Ishakwue immediately grabbed Mr. Jackson's wrist.

30.     Still, Mr. Jackson remained calm and stationary.

31.     Defendant Green did not give any explanation for why handcuffs were necessary.

32.     Defendant Ishakwue then placed handcuffs on one of Mr. Jackson's wrists.

33.     As Defendant Officers arrested him, Mr. Jackson repeatedly asked, "What are y'all doing this for?" and "What did I do?" He stated, "I didn't do nothing."

34.     Defendant Officers placed handcuffs on one of Mr. Jackson's wrists less than 12 seconds after initially approaching him.

35.     Faced with Defendant Officers suddenly jumping out of their vehicle, immediately accosting him, and offering no reason for handcuffing him, Mr. Jackson feared for his safety. He began to tense up, pull away, and bring his hands in toward his body. He did not want to be

handcuffed and did not understand why he was being treated this way.

### *Officers Injured and Sexually Assaulted Mr. Jackson While He Was Handcuffed*

36.     Defendant Green and an unknown officer pinned Mr. Jackson up against the car that he was peacefully leaning against seconds earlier.

37.     Mr. Jackson then attempted to call his parole officer to inform her about his arrest, but an unknown officer arrived on the scene and took Mr. Jackson's phone from his hand.

38.     Mr. Jackson informed Defendant Officers that the person on the phone was his parole officer, but Defendant Officers did not return his phone.

39.     Several other MPD officers arrived on the scene. There were approximately seven officers surrounding Mr. Jackson at this point.

40.     Mr. Jackson asked, "What did I do?" and an unknown officer responded, "I don't know, I just got here. Put your hands behind your back."

41.     Seconds later, Mr. Jackson began crying loudly in pain as four MPD officers aggressively grabbed his body.

42.     Mr. Jackson cried, "Hey, they're trying to break my arm!"

43.     Defendant Officers twisted Mr. Jackson's arm at an unnatural angle.

44.     Mr. Jackson continued crying out in pain.

45.     Mr. Jackson then requested a "White Shirt," the colloquial term for a supervisory MPD officer. Mr. Jackson continued to state that he did not do anything.

46.     Defendant Green then reached for Mr. Jackson's genitals while Mr. Jackson was handcuffed.

47.     Defendant Green repeatedly and unjustifiably groped Mr. Jackson's genitals while Mr. Jackson was handcuffed.

48.     Defendant Officers then took Mr. Jackson to the hospital to be treated for his injuries, which included bruised wrists, a bruised arm, and scratches all over his body.

### Officers Arrested Mr. Jackson in an Arbitrary, Extreme, and Outrageous Manner Instead of Taking Basic Investigatory Steps

49.     Defendant Officers named two charges in the police report corresponding to Mr. Jackson's arrest: "fleeing a law enforcement officer" and "resisting arrest."

50.     The "fleeing a law enforcement officer" charge was related to an alleged traffic stop involving a white BMW that occurred two days prior to Mr. Jackson's arrest.

51.     Mr. Jackson does not own a white BMW.

52.     Mr. Jackson does not know anyone who owns a white BMW.

53.     The car that Mr. Jackson was leaning against when officers arrived was not a white BMW.

54.     The only car registered to Mr. Jackson at the time of the alleged incident was a gray Dodge Charger.

55.     Instead of simply looking up Mr. Jackson's license and registration and seeing that he did not have a white BMW registered to him, Defendant Officers seized, arrested, injured, and sexually assaulted Mr. Jackson within seconds of stopping him.

56.     Additionally, because Mr. Jackson was on parole at the time of this arrest, he had a GPS monitor attached to his body. Mr. Jackson told Defendant Officers during his arrest that data from the GPS monitor attached to his body would prove that he was not at the scene of the alleged traffic incident two days prior, for which Defendant Officers claimed they were arresting him.

57.     He was telling the truth. Data from Mr. Jackson's GPS monitor confirms that Mr. Jackson was not at the scene of the alleged traffic incident.

58.     According to the police report, the alleged traffic incident occurred on April 4, 2022 at approximately 6:05 P.M. on the 600 block of Lamont St. NW in Washington, D.C. The GPS data

shows that, at that date and time, Mr. Jackson was at 3515A 14th St. NW, which is approximately a mile away from the location of the alleged incident.



**Offender Points Geo-Coded**
Offender: Jackson, Andre
Date Range: 4/4/2022 3:00:00 PM through 4/4/2022 8:00:00 PM
Time Interval: Hourly

**Offender: Jackson, Andre**
CSOSA#: C0229551

| Timestamp | Speed | Heading | Latitude | Longitude | Address |
|---|---|---|---|---|---|
| 4/4/2022 5:39:16 PM | 33 | 228 | 38.926250 | -76.963900 | 2840 Bladensburg Rd NE, Washington, DC 20018, USA |
| 4/4/2022 5:40:17 PM | 15 | 324 | 38.927650 | -76.967733 | 2852 Vista St NE, Washington, DC 20018, USA |
| 4/4/2022 5:41:16 PM | 10 | 222 | 38.927433 | -76.972400 | 2425 Hamlin Pl NE, Washington, DC 20018, USA |
| 4/4/2022 5:42:16 PM | 17 | 332 | 38.926533 | -76.972633 | 2841 Mills Ave NE, Washington, DC 20018, USA |
| 4/4/2022 5:42:47 PM | 11 | 274 | 38.927750 | -76.976150 | 3001 20th St NE, Washington, DC 20018, USA |
| 4/4/2022 5:43:47 PM | 39 | 238 | 38.927667 | -76.979250 | 1800 Rhode Island Ave NE, Washington, DC 20018, USA |
| 4/4/2022 5:44:46 PM | 15 | 266 | 38.925617 | -76.987300 | 2801 13th St NE, Washington, DC 20017, USA |
| 4/4/2022 5:45:47 PM | 3 | 270 | 38.925583 | -76.992133 | Noyes Recreation Center, 1000 Franklin St NE, Washington, DC 20017, USA |
| 4/4/2022 5:46:47 PM | 20 | 270 | 38.925617 | -76.995200 | 711/b Franklin St NE, Washington, DC 20017, USA |
| 4/4/2022 5:47:47 PM | 15 | 2 | 38.926283 | -77.000567 | 2837 4th St NE, Washington, DC 20002, USA |
| 4/4/2022 5:48:47 PM | 11 | 328 | 38.930967 | -77.000767 | 401 Michigan Ave NE, Washington, DC 20017, USA |
| 4/4/2022 5:49:46 PM | 0 | 332 | 38.931083 | -77.000850 | 401 Michigan Ave NE, Washington, DC 20017, USA |
| 4/4/2022 5:50:47 PM | 55 | 266 | 38.931317 | -77.007867 | 101 Irving St NW, Washington, DC 20310, USA |
| 4/4/2022 5:51:47 PM | 47 | 246 | 38.931083 | -77.015700 | 104 Irving St NW, Washington, DC 20010, USA |
| 4/4/2022 5:52:47 PM | 2 | 268 | 38.930000 | -77.022550 | 645 Kenyon St NW, Washington, DC 20010, USA |
| 4/4/2022 5:53:46 PM | 5 | 268 | 38.930400 | -77.025233 | 766 Lamont St NW, Washington, DC 20010, USA |
| 4/4/2022 5:55:11 PM | 2 | 232 | 38.930650 | -77.025433 | 766 Lamont St NW, Washington, DC 20010, USA |
| 4/4/2022 5:55:22 PM | 1 | 204 | 38.930500 | -77.025167 | 766 Lamont St NW, Washington, DC 20010, USA |
| 4/4/2022 5:56:22 PM | 4 | 272 | 38.929783 | -77.026217 | 779 Kenyon St NW, Washington, DC 20010, USA |
| 4/4/2022 5:57:15 PM | 22 | 266 | 38.932817 | -77.027150 | 1006 Monroe St NW, Washington, DC 20010, USA |
| 4/4/2022 5:58:15 PM | 0 | 240 | 38.932450 | -77.029583 | 1204 Monroe St NW, Washington, DC 20010, USA |
| 4/4/2022 5:59:15 PM | 14 | 6 | 38.932583 | -77.030867 | 1336 Meridian Pl NW, Washington, DC 20010, USA |
| 4/4/2022 6:00:00 PM | 0 | 274 | 38.933833 | -77.032533 | 3445 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:01:00 PM | 21 | 114 | 38.935250 | -77.033767 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:02:00 PM | 0 | 278 | 38.935067 | -77.033433 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:02:33 PM | 0 | 174 | 38.935017 | -77.033450 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:03:33 PM | 0 | 174 | 38.935117 | -77.033550 | 3515A 14th St NW, Washington, DC 20010, USA |

Created on: 5/27/2022 11:19:16 AM (ET)                                                              Page 3 of 7



**Offender Points Geo-Coded**
Offender: Jackson, Andre
Date Range: 4/4/2022 3:00:00 PM through 4/4/2022 8:00:00 PM
Time Interval: Hourly

**Offender: Jackson, Andre**
CSOSA#: C0229551

| Timestamp | Speed | Heading | Latitude | Longitude | Address |
|---|---|---|---|---|---|
| 4/4/2022 6:04:40 PM | 1 | 174 | 38.935083 | -77.033450 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:05:40 PM | 1 | 174 | 38.935050 | -77.033333 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:06:50 PM | 0 | 272 | 38.935033 | -77.033400 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:07:50 PM | 0 | 272 | 38.935067 | -77.033433 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:09:16 PM | 0 | 206 | 38.935167 | -77.033400 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:09:24 PM | 1 | 206 | 38.935117 | -77.033450 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:09:32 PM | 1 | 108 | 38.935050 | -77.033400 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:10:23 PM | 0 | 78 | 38.935083 | -77.033450 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:12:08 PM | 1 | 78 | 38.935100 | -77.033500 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:12:36 PM | 2 | 156 | 38.935150 | -77.033450 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:19:52 PM | 11 | 96 | 38.935017 | -77.033267 | 3515A 14th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:20:52 PM | 6 | 2 | 38.939300 | -77.032750 | 3911 14th St NW, Washington, DC 20011, USA |
| 4/4/2022 6:21:52 PM | 15 | 264 | 38.941900 | -77.033433 | 4201 Arkansas Ave NW, Washington, DC 20011, USA |
| 4/4/2022 6:22:53 PM | 0 | 272 | 38.941850 | -77.033700 | 4133 Arkansas Ave NW, Washington, DC 20011, USA |
| 4/4/2022 6:23:53 PM | 16 | 210 | 38.940817 | -77.034833 | 4100 Arkansas Ave NW, Washington, DC 20011, USA |
| 4/4/2022 6:24:53 PM | 38 | 236 | 38.937600 | -77.037933 | 3640 16th St NW, Washington, DC 20010, USA |
| 4/4/2022 6:25:53 PM | 26 | 248 | 38.935333 | -77.046900 | 2047 Rosemount Ave NW, Washington, DC 20010, USA |
| 4/4/2022 6:26:53 PM | 10 | 312 | 38.934400 | -77.052367 | 3501 Williamsburg Ln NW, Washington, DC 20008, USA |
| 4/4/2022 6:27:53 PM | 20 | 78 | 38.937317 | -77.057750 | Quebec Street Dog Park, 2850 Quebec St NW, Washington, DC 20008, USA |
| 4/4/2022 6:28:53 PM | 3 | 120 | 38.937017 | -77.056000 | 2801 Quebec St NW, Washington, DC 20008, USA |
| 4/4/2022 6:33:54 PM | 2 | 170 | 38.936833 | -77.055867 | 2801 Quebec St NW, Washington, DC 20008, USA |
| 4/4/2022 6:34:54 PM | 14 | 246 | 38.937183 | -77.058317 | 3531 Connecticut Ave NW, Washington, DC 20008, USA |
| 4/4/2022 6:34:59 PM | 9 | 250 | 38.937083 | -77.058617 | 3531 Connecticut Ave NW, Washington, DC 20008, USA |
| 4/4/2022 6:35:59 PM | 0 | 212 | 38.936950 | -77.058700 | 3531 Connecticut Ave NW, Washington, DC 20008, USA |
| 4/4/2022 6:36:59 PM | 29 | 120 | 38.935683 | -77.055917 | 2708 Porter St NW, Washington, DC 20008, USA |
| 4/4/2022 6:37:59 PM | 22 | 78 | 38.932667 | -77.046617 | 3223 Adams Mill Rd NW, Washington, DC 20010, USA |
| 4/4/2022 6:38:59 PM | 8 | 86 | 38.932383 | -77.041917 | 1816 Park Rd NW, Washington, DC 20010, USA |

Created on: 5/27/2022 11:19:16 AM (ET)                                                         Page 4 of 7

59.     Defendant Officers left a ticket for the alleged traffic incident on the windshield of Mr. Jackson's grandmother's car during or after Mr. Jackson's arrest. Mr. Jackson's grandmother's car is not a white BMW.



60.     The ticket is for "driving the wrong way on a one way street" and has a fine of $150.

61.     The badge number listed on the traffic ticket does not match the badge number of Defendant Green, who authored the police report for Mr. Jackson's arrest.

62.     Instead of simply serving Mr. Jackson with this ticket when they allegedly first "recognized" him, Defendant Officers seized, arrested, injured, and sexually assaulted Mr. Jackson within seconds of stopping him.

63.     Both of Mr. Jackson's charges were ultimately "no papered,"[11] meaning that a prosecutor decided not to charge him with any crimes. Mr. Jackson was released from jail after spending over 24 hours in custody.

---

[11] *See* District of Columbia Courts, *supra* n.1.

| Lock Up # | Arrest # | Defendant Name | PDID | Lead Charge | Case Level | Multi / # | Paper? | Docket Number | Status |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **USAO Completed Lockups** | | | | | |
| | | Lockup Date: 04/07/2022 | | | | | Time Printed: | 05:00 PM   Page: 1  of  2 | |
| 1 | 532205804 | ANDERSON, KEVIN | 756-016 | CPWL (Outside the Home)  (Eff 6/16/15) | CF2 | | RIP | 2022CF2001947 | E-Filed |
| 2 | 102205795 | EDWARDS, MARCUS | 683-944 | Assault | DVM | | Paper | 2022DVM000270 | E-Filed |
| 3 | 712205800 | SWANN, JAVON L | 753-872 | FUGITIVE FROM JUSTICE | | | | | Fugitive |
| 4 | 072205816 | STEWART, SHAWN S | 717-166 | Assault | DVM | | Paper | 2022DVM000271 | E-Filed |
| 5 | 062205797 | WEST, BRIA A | 756-015 | Assault | DVM | | Paper | 2022DVM000274 | E-Filed |
| 6 | 102205819 | ALI, HAIDER | 614-122 | FALSE PERSONIFICATION - OFFICER OR EMPLO | | | | | TOT/DC |
| 7 | 492205802 | REGAN, WILLIAM | 755-989 | UE (Private Property) | | | No Paper | | NP Compl |
| 8 | 492205208 | DIXON, NICHOLAS | 756-014 | UE W/O Authority (Public Property) | CMD | | Paper | 2022CMD001946 | E-Filed |
| 9 | 022205822 | POPE, K'VAUGHAN | 756-023 | CPWL (Outside the Home)  (Eff 6/16/15) | CF2 | Y/2 | RIP | 2022CF2001955 | E-Filed |
| 9 | 022205822 | POPE, K'VAUGHAN | 756-023 | SPEED (30 OR OVER) | | Y/2 | | | TOT/OAG |
| 10 | 022205815 | LANE, DAVONN J | 756-019 | CPWL (Outside the Home)  (Eff 6/16/15) | | | No Paper | | NP Compl |
| 11 | 092205830 | MERCHENT, CHARLES | 490-468 | Misd. Sex Abuse - sexual act with fingers/objects or any sexua | CMD | | Paper | 2022CMD001951 | E-Filed |
| 12 | 012205827 | FRAZIER, TYRONE P | 353-258 | PCP Liquid-Unlawful Possession | | | No Paper | | NP Compl |
| 13 | 062205817 | LEWIS, MARQUISE | 596-163 | UE (Private Property) | | | No Paper | | NP Compl |
| 14 | 102205821 | LORENZO, FEREBEE P | 378-809 | Distribution | CF2 | | RIP | | E-Filed |
| 15 | 062205823 | BRYANT, NAOMI N | 756-024 | Assault | DVM | | No Paper | | NP Compl |
| 16 | 102205829 | LESTER, KEVIN L | 590-167 | PWID | | | No Paper | | NP Compl |
| 17 | 012205824 | TAYLOR, JAQUAN | 661-581 | TPO | DVM | | Paper | 2022DVM000272 | E-Filed |
| 18 | 042205820 | JACKSON, ANDRE | 641-193 | Fleeing (Misdemeanor) | | | No Paper | | NP Compl |
| 19 | 052205833 | RAY, KEVIN | 635-352 | CPWL (Outside the Home)  (Eff 6/16/15) | | | No Paper | | NP Compl |

64.     The extreme and outrageous conduct of Defendant Officers, which could have been avoided with the most basic investigatory steps, inflicted substantial emotional distress on Mr. Jackson.

65.     The arrest made Mr. Jackson feel fearful, humiliated, embarrassed, and shocked.

66.     This incident also deprived Mr. Jackson of the opportunity to make memories and spend important family time with his daughter.

67.     Defendant Officers' violent and arbitrary actions have made Mr. Jackson fearful of going outside. He now limits his leisure time outside to 10-20 minutes a day.

68.     Mr. Jackson is fearful of being separated from his daughter again because of arbitrary police action.

**Compliance with D.C. Code § 12-309**

69.     D.C. Code § 12-309 states that "[a] report in writing" by MPD "in regular course of duty" constitutes "sufficient notice" under this provision. In turn, D.C. Code § 5–113.01 requires MPD to maintain a record of every interaction between MPD officers and civilians. Defendant Officers

12

made such a report of Mr. Jackson's arrest. That report constitutes sufficient notice under § 12-309.

## COUNT I: Fourth Amendment: False Arrest/False Imprisonment
### *Plaintiff Andre Jackson against Defendant Officers*

70.    Plaintiff re-alleges and incorporates by reference the preceding allegations in this Complaint as if fully set forth herein. Defendant Officers are jointly and severally liable for seizing Mr. Jackson absent a warrant, probable cause, reasonable suspicion, or any other lawful basis.

71.    Instead of taking the most basic investigatory steps, Defendant Officers, utilizing both words and force, detained Mr. Jackson against his will and without any lawful basis.

72.    Defendant Green grabbed Mr. Jackson by the hoodie and directed Defendant Ishakwue to put handcuffs on Mr. Jackson's wrists.

73.    Defendant Ishakwue placed handcuffs on Mr. Jackson's wrists, placing him under police control.

74.    Defendant Officers took the aforementioned actions within seconds of approaching Mr. Jackson instead of simply giving Mr. Jackson a traffic ticket.

75.    Defendant Officers took the aforementioned actions within seconds of approaching Mr. Jackson without checking Mr. Jackson's license and registration.

76.    Defendant Officers took the aforementioned actions within seconds of approaching Mr. Jackson without seeing a white BMW on the scene.

77.    Defendant Officers took the aforementioned actions within seconds of approaching Mr. Jackson while Mr. Jackson was wearing a face covering, making it implausible that they could have recognized him as the person allegedly driving the white BMW two days prior.

78.    Mr. Jackson's GPS monitor data shows that he was not at the scene of the alleged traffic incident that Defendant Officers claimed formed the basis for the arrest.

79.     After Defendant Officers took all of the aforementioned actions, Mr. Jackson's charges were ultimately no-papered.

## COUNT II: Common Law False Arrest/False Imprisonment
### *Plaintiff Andre Jackson against all Defendants*

80.     Plaintiff re-alleges and incorporates by reference the preceding allegations in this Complaint as if fully set forth herein.

81.     Defendant Officers and the District of Columbia are jointly and severally liable for seizing Mr. Jackson absent a warrant, probable cause, reasonable suspicion, or any other lawful basis.

82.     Defendant Officers, utilizing both words and force, detained Mr. Jackson against his will.

83.     Defendant Green grabbed Mr. Jackson by the hoodie and directed Defendant Ishakwue to put handcuffs on Mr. Jackson's wrists.

84.     Defendant Ishakwue placed handcuffs on Mr. Jackson's wrists, placing him under police control.

85.     Defendant Officers took the aforementioned actions within seconds of approaching Mr. Jackson instead of simply giving Mr. Jackson a traffic ticket.

86.     Defendant Officers took the aforementioned actions within seconds of approaching Mr. Jackson without checking Mr. Jackson's license and registration.

87.     Defendant Officers took the aforementioned actions within seconds of approaching Mr. Jackson without seeing a white BMW on the scene.

88.     Defendant Officers took the aforementioned actions within seconds of approaching Mr. Jackson while Mr. Jackson was wearing a face covering, making it implausible that they could have recognized him as the person driving the white BMW two days prior.

89.     Mr. Jackson's GPS monitor data shows that he was not at the scene of the alleged traffic incident that Defendant Officers claimed formed the basis for the arrest.

90.     After Defendant Officers took all of the aforementioned actions, Mr. Jackson's charges were ultimately no-papered.

91.     In other words, instead of taking the most basic investigatory steps, Defendant Officers seized and arrested Mr. Jackson without probable cause.

92.     Defendant District of Columbia is liable under the doctrine of *respondeat superior* for the actions of its agents, Defendant Officers, who acted within the scope of their employment as MPD officers and on behalf of and in the interest of their employer.

### COUNT III: Assault and Battery
### *Plaintiff Andre Jackson against Defendant Green and the District of Columbia*

93.     Plaintiff re-alleges and incorporates by reference the preceding allegations in this Complaint as if fully set forth herein.

94.     Defendant Green and Defendant District of Columbia are joint and severally liable for the assault and battery committed on Mr. Jackson.

95.     While effectuating the unlawful arrest of Mr. Jackson, Defendant Green sexually assaulted Mr. Green by repeatedly grabbing at and groping Mr. Jackson's genitals in an offensive manner.

96.     At no point did Mr. Jackson consent to this unwanted and offensive bodily contact.

97.     This contact went beyond any level of physical contact needed to effectuate an arrest.

98.     Defendant District of Columbia is liable under the doctrine of *respondeat superior* for the actions of its agent, Defendant Green, who acted within the scope of his employment as an MPD officer and on behalf of and in the interest of his employer.

### COUNT IV: Intentional Infliction of Emotional Distress
### *Plaintiff Andre Jackson against all Defendants*

99.     Plaintiff re-alleges and incorporates by reference the preceding allegations in this Complaint as if fully set forth herein.

100.    Defendant Officers and Defendant District of Columbia are jointly and severally liable for the extreme and outrageous conduct of seizing, arresting, injuring, sexually assaulting, and detaining Mr. Jackson without probable cause.

101.    Defendant Officers continued grabbing, arresting, and injuring Mr. Jackson despite his clear requests for a supervisory MPD officer to intervene.

102.    An unknown officer snatched Mr. Jackson's phone out of his hand even though he knew that Mr. Jackson was attempting to inform his parole officer about his arrest.

103.    Defendant Green reached for and groped Mr. Jackson's genitals while he was handcuffed.

104.    After all of the aforementioned humiliating and violent actions, Mr. Jackson's charges were ultimately no-papered.

105.    Defendant Officers took the aforementioned humiliating and violent actions instead of taking the most basic investigatory steps that would have immediately shown Mr. Jackson was not the person for whom they were looking.

106.    Defendant Officers' actions severely humiliated and embarrassed Mr. Jackson. He still experiences emotional distress from the incident today. He is afraid to go outside. He is afraid of being separated from his six-year old daughter.

107.    Defendant District of Columbia is liable under the doctrine of *respondeat superior* for the actions of its agents, Defendant Officers, who acted within the scope of their employment as MPD officers and on behalf of and in the interest of their employer.

### COUNT V: Negligence
### *Plaintiff Andre Jackson against the District of Columbia*

108.    Plaintiff re-alleges and incorporates by reference the preceding allegations in this Complaint as if fully set forth herein.

109.    Defendant District of Columbia is directly liable for its negligent training, retention, and supervision of Defendant Officers.

110.    As described above, Defendant District of Columbia has been made aware of the unlawful practice of police jump-outs numerous times over the past several years.[12] Despite these complaints and warnings, MPD Chief Contee has testified under oath that to his knowledge, as of November 2022, there has been no investigation into the use of jump-outs.

111.    Despite this knowledge, Defendant District of Columbia failed to adequately supervise and train Defendant Officers to cease this illegal practice.

112.    Despite this knowledge, Defendant District of Columbia continues to retain officers such as Defendant Officers who continue to illegally jump out of their police vehicles and arrest people with no lawful basis.

113.    Defendant District of Columbia has a duty to properly hire, train, supervise, and, if necessary, fire its employees in order to protect the public against reasonable dangers which would be likely to occur in absence of proper hiring, training, supervision, and firing. For the reasons explained above, it has breached this duty.

114.    As a result of this breach, Mr. Jackson was illegally arrested and detained, sexually assaulted, and continues to experience emotional distress to this day, including a fear of leaving his home.

### COUNT VI: Negligence
***Plaintiff Andre Jackson against all Defendants, in the alternative to Counts I-III***

115.    Plaintiff re-alleges and incorporates by reference the preceding allegations in this Complaint as if fully set forth herein.

_____

[12] *See* Flack & Wilson, *supra* n.4.

116.    In the alternative to a finding of liability under the Fourth Amendment or of false arrest or assault and battery, Defendant Officers and Defendant District of Columbia are joint and severally liable for their negligence.

117.    Defendant Officers owed Mr. Jackson a standard of care of taking basic investigatory steps before they arrested him without probable cause.

118.    Defendant Officers had a duty to verify that Mr. Jackson was the person for whom they were looking. They did not.

119.    Defendant Officers had a duty to verify that the white BMW they claim had fled police two days prior was associated with Mr. Jackson. They did not.

120.    Defendant Officers had a duty to verify that the GPS data from Mr. Jackson's electronic monitoring device showed that he was at the location of the crime. They did not.

121.     What Defendant Officers did instead was jump out of their vehicles, immediately handcuff an innocent man, and grab and grope his genitals.

122.    Defendant District of Columbia is liable under the doctrine of *respondeat superior* for the actions of its agents, Defendant Officers, who acted within the scope of their employment as MPD officers and on behalf of and in the interest of their employer.

123.    Due to Defendants' negligence, Mr. Jackson was unlawfully detained and continues to harbor a fear of leaving his home.

### COUNT VII: Fifth Amendment: Substantive Due Process
***Plaintiff Andre Jackson against Defendant Officers, in the Alternative to Count I***

124.    Plaintiff re-alleges and incorporates by reference the preceding allegations in this Complaint as if fully set forth herein.

125.    In the alternative to a finding of liability under the Fourth Amendment, Defendant Officers are jointly and severally liable for treating Mr. Jackson with deliberate indifference that shocks the

conscience and invokes the very notion of an "arbitrary exercise of governmental power." *See Daniels v. Williams*, 474 U.S. 327, 331 (1986); *Moore v. District of Columbia*, 79 F. Supp. 3d 121 (D.D.C. 2015).

126.    Defendant Officers jumped out on Mr. Jackson and arbitrarily arrested him with no lawful basis within seconds of approaching him. Defendant Officers continued to accost Mr. Jackson even after he asked for a supervisory MPD officer and tried to contact his parole officer. Defendant Officers' actions match citizens' complaints about "jump-outs," in which MPD officers arbitrarily target and arrest Black people in low-income neighborhoods.

127.    The most basic of investigatory steps would have shown that Mr. Jackson was not the person who had fled officers in a white BMW two days earlier.

128.    Because of Defendant Officers arbitrary actions, Mr. Jackson was unlawfully detained and continues to suffer from ongoing harm including a fear of spending more than a few minutes outside of his home and being separated from his 6-year-old daughter.

### COUNT VIII: Negligent Infliction of Emotional Distress
*Plaintiff Andre Jackson against all Defendants, in the Alternative to Count IV*

129.    Plaintiff re-alleges and incorporates by reference the preceding allegations in this Complaint as if fully set forth herein.

130.    In the alternative to a finding of intentional infliction of emotional distress, the Defendant Officers and Defendant District of Columbia are jointly and severally liable for their negligent infliction of emotional distress upon Mr. Jackson

131.    Defendant Officers neglected to conduct even the most basic investigatory steps, which would have quickly revealed that they did not have a lawful basis to arrest Mr. Jackson. Instead, as explained above, Defendant Officers seized, arrested, injured, and sexually assaulted Mr. Jackson within seconds of approaching him.

132.    Defendant Officers' actions severely humiliated and embarrassed Mr. Jackson. He still experiences emotional distress from the incident today, including a fear of spending more than a few minutes outside of his home and being separated from his six-year-old daughter.

133.    Defendant District of Columbia is liable under the doctrine of *respondeat superior* for the actions of its agents, Defendant Officers, who acted within the scope of their employment as MPD officers and on behalf of and in the interest of their employer.

### REQUEST FOR RELIEF

134.    Defendants' brazen disregard for the rule of law, investigatory obligations, and Plaintiff's dignity has led to pain, fear, suffering, and material costs to Plaintiff. Plaintiff now asks the Court to enter a judgment confirming that these police officers are not above the laws they purport to enforce and that they will be held accountable for their gross abuse of authority.

135.    WHEREFORE, on the basis of the foregoing, Plaintiff demands a jury trial for all issues so triable pursuant to the Seventh Amendment of the United States Constitution and Federal Rules of Civil Procedure, and requests that this Court issue the following relief:

    a.  Declare that Defendants violated Plaintiff's constitutional rights and rights under D.C. law;

    b.  Award compensatory damages against Defendants in an amount to be determined by a jury at trial, for the emotional distress, fear, embarrassment, humiliation, reputational damage, inconvenience, and loss of income that Plaintiff has suffered and continues to suffer as a result of this incident;

    c.  Award punitive damages against Defendants for their willful and egregious violations of the law in an amount to be determined by a jury at trial;

d. Award reasonable attorneys' fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable law; and

e. Award such relief as the Court deems just and proper.

Respectfully submitted this 4th day of April, 2023.


/s/ Leonard J. Laurenceau

Leonard J. Laurenceau (D.C. Bar No. 90007729)*
Kiah Duggins (D.C. Bar No. 1779266)*
Brittany Francis (D.C. Bar No. 90008960)*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
leo@civilrightscorps.org
Phone: (202) 844-4975

* Not a member of the Bar of this Court. Appearing without compensation from clients, pursuant to Local Civil Rule 83.2(f).

*Counsel for Plaintiff*