UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANDRE JACKSON**,<br><br>        Plaintiff,<br><br>        v.<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>        Defendants. | Case No. 23-cv-922 (CRC) |

### MEMORANDUM OPINION AND ORDER

In early 2023, Plaintiff Andre Jackson filed suit against the District of Columbia and two Metropolitan Police Department ("MPD") officers, alleging a suite of constitutional and common law claims stemming from his allegedly unlawful arrest the prior spring. Defendants responded with a motion to dismiss six of Jackson's eight claims under Federal Rule of Civil Procedure 12(b)(6), which the Court partially granted in a November 2023 opinion. In doing so, the Court found Jackson had plausibly alleged constitutional and common law false arrest claims and a claim that his arrest may have stemmed from the District's negligent supervision of MPD "jump-out" tactics. By contrast, the Court explained, Jackson's three "alternative" counts could not proceed as alleged because: (1) his negligence and negligent infliction of emotional distress claims were not separate and distinct from his intentional tort claims, as required under D.C. law; and (2) his Fifth Amendment substantive due process claim was not cognizable because constitutional challenges to the reasonableness of an arrest, including the level of force deployed, must be packaged under the Fourth Amendment. Because these deficiencies might be curable, however, the Court afforded Jackson another bite at the apple.

Jackson responded by filing an amended complaint. That amended complaint addresses only the identified deficiencies with Jackson's negligence claims, as he opted to stand pat on his

Fifth Amendment claim rather than restyle the supporting allegations under the proper constitutional clause. The only question, then, is whether Jackson's new complaint states viable claims of negligence against MPD Officers Donald Green and Afam Ishakwue ("the Officers") and the District under the doctrine of *respondeat superior*. The Court finds that it does, at least for pleading purposes. Accordingly, though substantial questions remain about the long-term prospects of this pair of negligence claims, the Court will deny in part Defendants' pending motion to dismiss and allow these counts to proceed for now alongside Jackson's intentional tort claims.

## I. Background

Jackson's amended complaint closely mirrors his allegations the first go around, which the Court already described in its prior opinion. See Jackson v. District of Columbia, No. 23-cv-922 (CRC), 2023 WL 7182120 (D.D.C. Nov. 1, 2023).

On an early April evening in 2022, Jackson alleges that he was standing on the sidewalk outside of the Park Morton Apartments in Northwest D.C. when Officers Green and Ishakwue "jumped out of their patrol car and made their way towards him." FAC ¶¶ 17–19. Despite the spring setting, Jackson claims he "was wearing a face covering to protect his face from the elements, making only his eyes, eyebrows, and forehead visible." Id. ¶ 21. The Officers nonetheless acted as though they recognized him, proclaiming that he was "driving the car the other day." Id. ¶ 23. As they approached, Jackson says he did not move away or otherwise attempt to evade the Officers. Id. ¶ 24. Yet, in the matter of a few short seconds, the Officers purportedly placed Jackson in handcuffs. Id. ¶¶ 25–35. The Officers then allegedly pinned him against a vehicle and, for some unknown reason, began roughing him up. Id. ¶¶ 36–48. After the melee, Jackson was taken into custody and held for 24 hours before being released. Id. ¶ 70.

His arrest was later "no papered," meaning the authorities decided not to proceed with any charges against him. Id. The reason no charges were brought, Jackson claims, is because the Officers detained the wrong guy: The alleged incident of "fleeing a law enforcement officer" had stemmed from a traffic stop involving a white BMW that had occurred two days prior to his arrest. Id. ¶¶ 49–50. Yet Jackson claims he neither owns a white BMW nor knows anyone who does. Id. ¶¶ 51–52. Moreover, the police report of that traffic incident says it occurred around 6:05 p.m. two days prior on the 600 block of Lamont Street in the Northwest part of the District, but the monitoring device that Jackson is required to wear as a condition of his parole supposedly shows he was nowhere near that area during the relevant time period. Id. ¶ 63.

One year later, Jackson filed suit against the Officers and the District. In all, his initial complaint contained eight claims: (1) a Fourth Amendment false arrest claim; (2) a common law false arrest claim; (3) assault and battery; (4) intentional infliction of emotional distress; (5) negligent training and/or supervision against the District; (6) negligence (in the alternative to Counts 1–3); (7) a Fifth Amendment substantive due process claim (in the alternative to Count 1); and (8) negligent infliction of emotional distress (in the alternative to Count 4). The two sets of Defendants responded with motions to dismiss, together moving to toss out all claims save for Counts 3 and 4.

In November 2023, the Court issued a split decision on the Defendants' motions. For the "primary" claims, the Court found that Jackson had adequately alleged false arrest and negligent training. Jackson, 2023 WL 7182120, at *3–7. But Jackson stumbled on his three "alternative" claims.

On Counts 6 and 8, the Court found these two negligence claims failed under D.C. law because, as alleged, "they [were] not 'separate and distinct' from Jackson's intentional false

3

arrest claims." Id. at *7 (quoting District of Columbia v. Chinn, 839 A.2d 701, 707 (D.C. 2003)).  In cases involving police misconduct, the Court explained, this "separate and distinct" requirement demands that the negligence cause of action be (1) "distinctly pled," (2) "based upon at least one factual scenario that presents an aspect of negligence apart from" the police officer's purported intentional tort, and (3) "violative of a distinct standard of care." Id. (quoting Blair v. District of Columbia, 190 A.3d 212, 224 (D.C. 2018)).  Though Jackson satisfied the first requirement, the Court held that he did not meet the second and third because his negligence claims appeared to center entirely on the allegation that the Officers had arrested him without probable cause—the same complaint that undergirded his false arrest claims.  The Court accordingly dismissed both negligence claims. Id. *8.  But it did so without prejudice to afford Jackson a chance to "cure these deficiencies by pointing to some separate legal duty that the Officers violated beyond the duty to establish probable cause before making an arrest," including by identifying "some D.C. law or regulation" setting forth a distinct standard of care that the Officers may have breached. Id.

As to Count 7, the Court explained that when police misconduct "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, rather than under a substantive due process approach of the Fifth Amendment." Id. (cleaned up).  To the extent "this due process claim reiterate[d] Jackson's challenge to the Officers arresting him absent probable cause," the Court found that it "merge[d] with his Fourth Amendment false arrest claim and need not be restated." Id.  But "to the extent this claim reache[d] beyond his current false arrest claim to challenge the manner in which the Officers executed his arrest rather than their justification underlying it," the Court

4

informed Jackson that he was free "to re-allege his challenge to the Officers' conduct during his arrest under the Fourth Amendment." Id.

Jackson filed an amended complaint one month later. In it, Jackson further developed his negligence claims by explaining how, in his view, the Officers were negligent in failing to perform an adequate follow-up investigation for the traffic incident before they arrested him. FAC ¶¶ 55–65, 122–31, 137–42. That failure to conduct a proper investigation directly led to his wrongful arrest, he says. On this score, Jackson identifies three MPD General Orders that he believes the Officers breached when investigating the traffic incident and arresting him. Id. ¶¶ 55–65. By contrast, Jackson opted not to correct the identified deficiencies in his substantive due process claim, realleging the charge under the Fifth Amendment rather than reframing the allegations under the Fourth Amendment. See id. ¶¶ 132–36.

Defendants once more have moved to dismiss these three claims under Federal Rule of Civil Procedure 12(b)(6). In their motion, they contend that Jackson's efforts to patch up his negligence claims leave holes uncovered and note that he entirely failed to address the problem with his Fifth Amendment claim. See Partial Mot. Dismiss at 1–2. Jackson contests the first charge but concedes the second: He explains that the Court provided him "the *option* of amending these counts" and clarifies that he opted not to exercise that option for Count 7. See Opp'n at 4 (emphasis in original).

## II. Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. A court evaluating a Rule 12(b)(6) motion will "construe the complaint 'liberally,' granting plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, a "court need not accept a plaintiff's legal conclusions as true, . . . nor must a court presume the veracity of legal conclusions that are couched as factual allegations." Alemu v. Dep't of For-Hire Vehicles, 327 F. Supp. 3d 29, 40 (D.D.C. 2018) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2009)).

### III. Analysis

Because Jackson has not tried to resurrect the set of allegations flying under the Fifth Amendment flag, the only live question is whether Counts 6 and 8 of Jackson's amended complaint state viable negligence claims that are separate and distinct from his false arrest claims. The Court finds they do, at least for pleading purposes, though it cautions Jackson that these negligence claims will face sizeable roadblocks down the pike.

As recounted above, in the prior outing, the Court doubted whether Jackson's negligence claims were independent of his false arrest claims and noted that the D.C. Court of Appeals and fellow courts in this District have regularly rebuffed efforts to bring these two charges in tandem. See Jackson, 2023 WL 7182120, at *7 (citing Katz v. District of Columbia, 285 A.3d 1289, 1317 (D.C. 2022)); Stewart-Veal v. District of Columbia, 896 A.2d 232, 235 (D.C. 2006); Kenley v. District of Columbia, 83 F. Supp. 3d 20, 47 (D.D.C. 2015)). Following suit, the Court held that Jackson's allegation that the Officers acted negligently when arresting him did not state a claim that was distinct from his false arrest charges because, at core, both appeared to turn on whether the Officers had probable cause for his arrest. Id. At the same time, the Court acknowledged that Jackson might be able to disentangle these claims if he could locate some "separate legal

6

duty," other than the probable cause requirement, that the Officers negligently violated when arresting him. Id. at *8.

Trying to answer this call, Jackson's amended complaint both clarifies the nature of his negligence claims and identifies three MPD General Orders that, in his view, the Officers failed to follow when arresting him that spring evening. He first makes clear that his negligence claims are based on the central charge that the Officers negligently investigated the prior traffic incident involving the white BMW—which, in turn, purportedly led to his wrongful arrest. FAC ¶¶ 58–59. This haphazard investigation continued up to the moment he was detained, Jackson says, as the Officers ignored his protests that data from his GPS monitoring device "would prove that he was not at the scene of the alleged traffic incident two days prior." Id. ¶ 61. In failing to perform an adequate investigation before reaching for the handcuffs, Jackson claims the Officers breached a trio of MPD General Orders: (1) General Order 304.01(I)(B)(4), which provides that MPD's "District Investigative Sections shall be responsible for processing, and, as appropriate, conducting a follow-up investigation on . . . all felonies not specifically assigned to the Criminal Investigations Division"; (2) General Order 304.01(I)(B)(1), clarifying that one "objective[] of the follow-up investigation [is] to . . . accumulate sufficient information and evidence to provide probable cause for effecting an arrest"; and (3) General Order 304.10(II)(B)(4)(a)(2), instructing MPD officers to "stop an individual for only the length of time required to obtain the information necessary for the investigation." Id. ¶¶ 55, 56, 64. By negligently flouting these three standards of care, Jackson argues, the Officers committed a tortious offense beyond the intentional tort of false arrest.

For the most part, these allegations do not solve the problem that the Court identified in its prior opinion. Again, Jackson asserts that the Officers did not do enough investigative work

before cuffing him.  But that claim largely redounds to an argument that the Officers did not establish probable cause before effectuating an arrest, which, as D.C. courts consistently have held, collapses into the intentional tort of false arrest.  See, e.g., Katz, 285 A.3d at 1317; Stewart-Veal, 896 A.2d at 235.  If that were all there was to Jackson's negligence claims, then, the Court would be obligated to take its cue and dismiss these counts stage left.

There is nonetheless at least one way in which Jackson's negligence claims may pull away from his charge of false arrest.  Apart from arguing the Officers here did not do enough to establish probable cause before arresting him, Jackson also claims the Officers failed to perform basic investigative steps that would have conclusively shown that he was not in fact the person behind the wheel of the white BMW two nights earlier.  This includes, most notably, failing to check his GPS monitoring device, which purportedly placed him far away from the scene of the crime.  See FAC ¶¶ 61–63.  Had the Officers performed this basic investigative task, Jackson contends, this exculpatory evidence would have undermined any probable cause supporting his arrest.  Put differently, the issue here is not just whether the Officers lacked probable cause for arresting Jackson that evening; rather, it is whether their allegedly negligent investigation and resulting failure to discover exculpatory evidence revealing they had the wrong guy in their sights harmed Jackson.  So understood, there may be some daylight between Jackson's negligence claims and false arrest claims after all.

But that raises another vexing question:  Can officers be held liable for conducting a "negligent investigation" even when an arrest was supported by probable cause?

Jackson says yes, of course, pointing to the MPD General Orders cited above.  These General Orders don't get him too far, however, because they do not create a "separate legal duty" that can ground a negligence claim.  It is well-settled that these types of internal police

guidelines "create no rights enforceable by the public," Ochs v. District of Columbia, 258 A.3d 169, 174 (D.C. 2021), and "do not establish a standard of care," Dormu v. District of Columbia, 795 F. Supp. 2d 7, 29 (D.D.C. 2011).  To be sure, such internal guidance "may properly be received in evidence as bearing on the standard of care."  Id. (citation omitted).  Ultimately, though, "liability only attaches if the police were negligent with regard to a *national* standard of care."  Rice v. District of Columbia, 715 F. Supp. 2d 127, 132 (D.D.C. 2010) (emphasis added).  The General Orders that Jackson cites do not, by themselves, expose the existence of any national standard of care owed to him.  MPD General Order 304.01 directs officers to investigate felonies in aim of identifying the culprit.  This duty to investigate—which is trained at ensuring public safety—is owed to the community, not the suspect.  The accompanying objective of establishing probable cause elaborates that duty while repeating the evidentiary standard required for arrests.  As such, it cannot serve as the basis for negligence actions beyond the intentional tort of false arrest.  See Bethel v. Rodriguez, No. 20-cv-1940 (RC), 2023 WL 6388851, at *13 n.18 (D.D.C. Sept. 30, 2023) (indicating that reliance on the MPD General Order requiring probable cause did not offer an independent basis for a negligence action).  Similarly, General Order 304.10's directive that MPD officers cannot stop persons longer than necessary for investigative purposes is little more than an affirmation of the constitutional rule articulated in Terry v. Ohio, 392 U.S. 1 (1968), and its progeny.  None of these General Orders provides a solid foundation for a national standard of care governing police investigations apart from the traditional prohibition against arrests absent probable cause (or, similarly, investigatory stops unsupported by reasonable suspicion).

Looking elsewhere in search of a national standard of care governing investigations leading to arrests, the Court finds significant support for the view that no such standard exists

9

apart from the probable-cause requirement.  Indeed, it appears the majority of jurisdictions that have considered the matter have refused to look beyond whether police had probable cause for an arrest and inquire into whether officers otherwise conducted their investigation reasonably.  Surveying the legal landscape circa 1992, the Iowa Court of Appeals identified no "jurisdiction recognizing the tort of negligent investigation of a crime."  Wimer v. State, 841 P.2d 453, 455 (Idaho Ct. App. 1992) (citing cases).  Since then, most jurisdictions have continued the trend and refused to recognize a tort of "negligent investigation."[1]  In doing so, these courts have held that plaintiffs who believe they were wrongly arrested must make their case through the traditional common law actions governing this domain, such as false arrest.  See, e.g., Frigerio v. United States, No. 10 CIV. 9086 SAS, 2011 WL 3163330, at *9 (S.D.N.Y. July 22, 2011) ("A plaintiff may seek recovery only through the traditional tort remedies of false arrest, false imprisonment and malicious prosecution."); Echavarria v. Roach, 565 F. Supp. 3d 51, 97 (D. Mass. 2021) ("Plaintiff, as the subject of the investigation, has other causes of action available to pursue the damages resulting from the ill-founded allegations against him, but he cannot himself assert a cause of action based on negligent investigation.").  Under this view, the duty to investigate is owed to the public, and police officers' only duty to the suspect is to not arrest absent probable cause.  Bush v. City of Daytona Beach, No. 6:12-CV-1541-ORL-36, 2013 WL 3209430, at *5

---

[1] See, e.g., Fondren v. Klickitat Cnty., 905 P.2d 928, 934 (Wash. Ct. App. 1995) ("A claim for negligent investigation is not cognizable under Washington law."); Ferreira v. City of Binghamton, 975 F.3d 255, 275 (2d Cir.) ("It is well settled that an action for negligent arrest and investigation does not exist in the State of New York." (citation omitted)); Waskey v. Mun. of Anchorage, 909 P.2d 342, 344 (Alaska 1996) ("This conclusion is in accordance with numerous cases from other jurisdictions which have declined to recognize the duty to conduct criminal investigations in a non-negligent manner and have therefore refused to recognize a tort of negligent investigation of a crime."); Goldyn v. Clark Cnty., No. 2:06-cv-0950-RCJ, 2007 WL 2592797, at *8 (D. Nev. Aug. 31, 2007), aff'd, 346 F. App'x 153 (9th Cir. 2009) ("Federal and state courts are in harmony in refusing to recognize a cause of action based on negligent police investigation.").

(M.D. Fla. June 24, 2013) ("[N]egligent conduct in police investigations does not give rise to a cause of action because the duty to protect the public is owed to the public generally."). Where an arrest is backed by probable cause, then, there can be no liability. See, e.g., Rodrigues v. Cnty. of Hawaii, No. 20-cv-15097, 2021 WL 4168155, at *2 n.2 (9th Cir. Sept. 14, 2021) ("Because [the plaintiff's] arrest was supported by probable cause, his state-law claims for false arrest and for negligent investigation in connection with his arrest likewise failed as a matter of law."). In explaining their refusal to go beyond the tried-and-true claim of false arrest, these jurisdictions have leaned not only on tradition but also on public-policy considerations. Specifically, they have worried that layering atop probable cause a free-form inquiry into whether the police conducted their investigation reasonably would unduly deter officers' execution of important public safety duties. See, e.g., Lahm v. Farrington, 90 A.3d 620, 623–27 (N.H. 2014). Probable cause, from this vantage, must be preserved as a safe harbor: Once officers reach this evidentiary threshold, they should be able to arrest a suspect without fear of judicial second-guessing.

This majority view has purchase. But while there may be wisdom in the crowds, it is important not to exaggerate the ubiquity of this position. Contrary to the Iowa Court of Appeals' impression, not every State is lockstep in rejecting a "negligent investigation" tort. In California, for instance, officers *can* be liable for negligent investigations leading to wrongful arrest. See, e.g., Daluise v. Mccauley, No. 2:15-cv-02701-CAS-JEMx, 2015 WL 7573649, at *6 (C.D. Cal. Nov. 24, 2015). To be sure, in many instances, officers are shielded by California Government Code § 821.6's broad immunity "for injury caused by his instituting or prosecuting any judicial or administrative proceeding," as evidenced by the Ninth Circuit's decision in Martinez v. City of Los Angeles, 141 F.3d 1373, 1381 (9th Cir. 1998) (en banc). But that's not true in every case.

11

See, e.g., 52 Cal. Jur. 3d Public Officers and Employees § 273 ("The California statute granting immunity . . . does not apply to an arrestee's claim . . . for negligence arising from negligent investigation resulting in a false arrest where no lawful process was ever instituted."); Drakeford v. Cnty. of Orange, 213 F. App'x 542, 546 (9th Cir. 2006) (holding officers were not immune from negligent-investigation claim). And regardless, whether the plaintiff has a cause of action and whether the officers are immunized are separate inquiries. California is not alone either. Other jurisdictions buck the norm and recognize "negligent investigation" as a viable tort claim. See, e.g., 32 Am. Jur. 2d False Imprisonment § 6 ("According to some courts, a person may be liable for damages for false arrest or false imprisonment if said action is negligent."); Kerns v. United States, No. 04-cv-01937 PHX NVW, 2007 WL 552227, at *12 (D. Ariz. Feb. 21, 2007), rev'd on other grounds, No. 07-15769 (9th Cir. Jan. 28, 2009) (holding Arizona recognizes tort of grossly negligent police investigation). Perhaps for that reason, the Fourth Circuit reversed a district court for assuming that Virginia would not recognize a negligent-investigation claim where there was a "dearth of state law on negligent investigations." Safar v. Tingle, 859 F.3d 241, 251 (2017); see also id. at 255 (Floyd, J., concurring) ("I agree with my colleagues in the majority that the district court was incorrect to adjudicate Plaintiff's state law gross negligence claims on the grounds that Virginia state law recognizes no duty for negligent investigation.").

That's all prelude to the crucial question here: Does the District of Columbia recognize a tort of negligent investigation? Unfortunately, as in Virginia, the D.C. courts have not squarely answered that question. They certainly have held that claims sounding in negligence *at times* merge with the intentional tort of false arrest, as discussed above. See, e.g., Katz, 285 A.3d at 1317. But that may reflect how the negligence actions were alleged in those cases rather than represent a categorical rejection of negligence challenges to police investigations leading to

12

arrests—even where, as here, the plaintiff claims that a reasonable investigation into the incident would have unearthed exculpatory evidence sufficient to topple any semblance of probable cause the police may have had.  Finding that negligence actions merge with false arrest claims in some cases, accordingly, does not necessarily foreclose the possibility that a properly alleged negligent-investigation claim could still exist in the District.

Plumbing the caselaw, the Court has identified multiple instances where the D.C. Court of Appeals has been presented with what sound like negligent-investigation claims and, rather than seize the opportunity to clarify that there is no such thing under D.C. law, the court instead dismissed the claim on other grounds.  See, e.g., Jackson v. District of Columbia, 412 A.2d 948, 954–55 (D.C. 1980); Minch v. District of Columbia, 952 A.2d 929, 940–42 (D.C. 2008).  Even more telling, in this District, multiple courts have allowed negligent-investigation claims to proceed alongside false arrest claims.  See, e.g., Kowalevicz v. United States, 302 F. Supp. 3d 68, 71, 75–76 (D.D.C. 2018); Bethel v. Rodriguez, No. 20-cv-1940 (RC), 2021 WL 1340961, at *5–6 (D.D.C. Apr. 9, 2021).  The Court counts itself among those ranks.  In Goolsby v. District of Columbia, several MPD officers responded to a dispatch call that relayed false or misleading information about a supposedly imminent bank robbery by arresting the unwitting Jason Goolsby without good reason.  354 F. Supp. 3d 69, 73 (D.D.C. 2019).  Goolsby sued, raising false imprisonment and negligence claims.  There, as here, the officers moved to dismiss the negligence action on the ground that it was not separate and distinct from Goolsby's false imprisonment claim.  Id. at 77.  The Court denied the motion, however, finding Goolsby had "just barely" met his burden of alleging that the officers had negligently breached "a distinct standard of care" when arresting him—namely, he claimed the MPD officers failed to reasonably "investigate[e] a 911 caller's claims of potential crimes in order to accurately assess and respond

13

to a potential criminal situation" before arresting a suspect on the scene. Id. at 78. The Court, in other words, accepted that the officers *may* be liable for negligently investigating the dispatcher's call before arresting Goolsby and thus permitted the negligence claim to proceed to discovery. Jackson's allegations in his amended complaint are of a piece with Goolsby's. Accordingly, seeing no subsequent developments in D.C. law that call into question Goolsby or comparable holdings of other courts, the Court will follow the standard practice in this District and permit Jackson's negligence claims to proceed to the next stage of litigation.

Allowing Jackson's negligence claims to proceed appears doubly appropriate because, even if D.C. would follow the majority rule and reject the notion of a "negligent investigation" tort, it is not obvious that Jackson's allegations exclusively fall under this banner. While his complaint is less than clear on this point, at times, he gestures toward the possibility that the Officers were negligent not only in the lead up to his arrest that April evening but also in their continued failure to perform sensible investigatory steps that would have revealed sooner that Jackson was not the person from the traffic incident. This supposed negligence, which comes through most clearly in Jackson's new allegation that he begged the Officers on the scene to check his GPS monitoring device but that they ignored his pleas, arguably led to Jackson being detained for 24 hours when he theoretically could have been released on the spot. See FAC ¶¶ 61, 70. Viewed through this lens, the allegation is akin to a "prolonged detention" negligence claim, recognized in many jurisdictions, under which officers may be liable for negligently failing to discover or divulge exculpatory evidence that would have led to a detained suspect's expeditious release. See, e.g., Martinez, 141 F.3d at 1380–81; Thomas M. Fleming, Liability of Police or Peace Officers for False Arrest, Imprisonment, or Malicious Prosecution as Affected by Claim of Suppression, Failure to Disclose, or Failure to Investigate Exculpatory Evidence, 81

A.L.R. 4th 1031 (1990).[2]  At least at this stage, this alternative theory of negligence is sufficient to state a claim.

Before moving to the next phase of this litigation, a few words of caution for Jackson. First, though the Court has declined to dismiss the negligence claims at this juncture, Defendants are free to contest the viability of a "negligent investigation" claim under D.C. law at summary judgment with the benefit of this Court's aeration of the issue.  Second, because the Court is following the path it paved in Goolsby, it will repeat the instruction it provided to the plaintiff there:  Should Jackson "wish[] to survive summary judgment," he is advised to "develop with greater specificity the standards of care applicable to his negligence claim" and explain in more precise terms how, in his view, "those standards are distinct from those governing his intentional tort claims."  354 F. Supp. 3d at 79.  Third, even if D.C. does recognize a negligent-investigation claim, that in no way clinches the game for Jackson because Defendants may well be immunized against liability regardless.  Under D.C. law, officials are absolutely immune from suit where "(1) the official acted within the outer perimeter of his official duties, and (2) the particular government function at issue was discretionary as opposed to ministerial."  Minch, 952 A.2d at 939.  A similar immunity shields the District against liability for the discretionary acts of its agents.  See Powell v. District of Columbia, 602 A.2d 1123, 1126 (D.C. 1992).  Applied here, to the extent Jackson is contending that the Officers should have continued investigating the traffic incident even after they had enough evidence for probable cause, that could be a discretionary decision walled off from judicial review.  And that may not be a coincidence:  The logic

---

[2]  Notably, though, Jackson has not claimed that his "prolonged detention" amounted to a Fourth Amendment violation.  See, e.g., Russo v. City of Bridgeport, 479 F.3d 196, 207–09 (2007) (recognizing the failure to disclose readily available exculpatory evidence can, in some circumstances, violate an arrestee's Fourth Amendment right to be free from prolonged detention).

animating the District's immunity doctrine—*viz.*, the desire to avoid judicial second-guessing of officers' decisions and potentially chilling their exercise of important public-safety functions—is the same one other jurisdictions have latched onto when refusing to recognize a "negligent investigation" claim in the first place. See, e.g., Lahm, 90 A.3d at 625 ("Such an extension of liability is at odds with the well-established doctrines of probable cause and official immunity"). It's possible D.C. courts would agree and, for that reason, not venture beyond the time-honored tort of false arrest. But liability and immunity are conceptually distinct, and it would not be prudent to collapse the two inquiries here. Looking down the road, though, the Court suspects Defendants may raise these affirmative defenses in their forthcoming answer to the Amended Complaint.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [Dkt. No. 28] Defendants' Partial Motion to Dismiss the Amended Complaint is GRANTED in part and DENIED in part; it is further

**ORDERED** that Defendants answer the Amended Complaint by June 13, 2024.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: May 13, 2024